## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | Case No. 14-00052-11 |
| | ) | |
| | ) | Chapter 11 |
| **DEERFIELD RETIREMENT** | ) | |
| **COMMUNITY, INC.**, | ) | |
| | ) | Judge: |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S MOTION FOR ENTRY OF A STIPULATED INTERIM ORDER (1) AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362 AND 363 OF THE BANKRUPTCY CODE; (2) GRANTING ADEQUATE PROTECTION TO THE INDENTURE TRUSTEE PURSUANT TO SECTIONS 361, 362 AND 363 OF THE BANKRUPTCY CODE; AND (3) SCHEDULING A FINAL HEARING**

Deerfield Retirement Community, Inc., the debtor and debtor-in-possession in the above-captioned bankruptcy case (the "**Debtor**"), by and through its proposed undersigned counsel, hereby submits this motion pursuant to sections 105, 361, 362 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for a stipulated interim order (i) authorizing the interim use of cash collateral pursuant to sections 105, 361, 362 and 363 of the Bankruptcy Code, (ii) granting adequate protection to the Indenture Trustee pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and (iii) scheduling a final hearing (the "**Motion**").

This Motion is based on the arguments and legal authority set forth herein, the Declaration of Scott Harrison in Support of Chapter 11 Petition and First Day Pleadings (the "**Harrison Declaration**") filed concurrently herewith and incorporated herein by reference, the pleadings and papers on file herein, and such oral and documentary evidence as may be presented at the hearing on the Motion. In support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1. On January 10, 2014 (the "**Petition Date**"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor has continued in possession and management of its property and operates its business as debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108. No trustee or examiner has been appointed in this case.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtor's chapter 11 case is proper in this District pursuant to 28 U.S.C. § 1408 and 1409.

4. The statutory bases for the relief requested herein are Bankruptcy Code §§ 105, 361, 362 and 363, and Bankruptcy Rule 4001.

## BACKGROUND

1. The Debtor owns and operates a life care retirement community known as "Deerfield Retirement Community" located at 13731 Hickman Road, Urbandale, Iowa (the "**Facility**"). The Facility is comprised of 32 townhomes and 138 independent living apartments, common areas, a residential care facility with 24 residential care living units, and a health center with 30 skilled nursing care beds.

5. A detailed discussion of the Debtor's history, description of its business, assets and liabilities, and the events that led to the need for bankruptcy relief are set forth in the Harrison Declaration and the Plan Approval Motion (defined below) filed concurrently herewith and incorporated herein by reference.

6. To finance the construction and development of the Facility, the Debtor had the Iowa Finance Authority issue its Revenue Bonds (Deerfield Retirement Community, Inc. Project) Series 2003A and Series 2003B (the "**2003 Bonds**"). In 2007, the Debtor repaid the

2003 Bonds through the issuance by the Iowa Finance Authority of its (i) Senior Living Facility Revenue Refunding Bonds (Deerfield Retirement Community, Inc.) Series 2007A in the original principal amount of $40,955,000 and (ii) Senior Living Facility Revenue Refunding Bonds (Deerfield Retirement Community, Inc.) Series 2007B Extendable Rate Adjustable Securities in the original principal amount of $3,210,000 (collectively, the "**2007 Bonds**"), pursuant to an Indenture of Trust dated as of May 1, 2007 (the "**Indenture**") between the Iowa Finance Authority and Bankers Trust Company, N.A. as trustee.  UMB Bank, N.A. currently serves as the successor trustee under the Indenture (the "**Indenture Trustee**").

7. As of the Petition Date, the Series 2007A Bonds are outstanding in an aggregate principal amount of $37,715,000 and the Series 2007B Bonds are outstanding in an aggregate principal amount of $3,210,000.

8. Under that certain Loan Agreement dated as of May 1, 2007 (the "**Loan Agreement**") between the Debtor and the Iowa Finance Authority, the Debtor became obligated to make payments sufficient to discharge the 2007 Bonds as they became due.  To secure the Debtor's obligations under the Loan Agreement and its obligations under certain parity debt, the Debtor (i) granted a security interest in all income, revenues, receipts and other moneys received by or on behalf of the Debtor from the Facility or its operations and all rights to receive the same, with certain exceptions and (ii) executed a Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Financing Statement, dated as of May 1, 2007 (the "**Mortgage**"), granting (i) a mortgage lien on the real property associated with the Facility, and (ii) a security interest in the personal property and fixtures included in the Facility.  In addition to the Mortgage, the liens of the Indenture Trustee are also perfected through various filings under the Uniform Commercial Code and with deposit account control agreements with the Debtor's bank,

Bankers Trust Company.

9. In April 2013, the Debtor commenced discussions with certain holders of the 2007 Bonds regarding a restructuring of the bond debt. These discussions accelerated in June 2013 when the Debtor failed to make its monthly payments to the Indenture Trustee under the Loan Agreement, which was an event of default under the Indenture and the 2007 Bonds.

10. A group of the holders of the majority of the outstanding 2007 Bonds entered into a forbearance agreement with the Debtor while such negotiations were on-going and such bondholders agreed to certain modifications to the Loan Agreement to allow Lifespace Communities, Inc. ("**Lifespace**") to make certain advances to the Debtor as secured "Parity Debt" under the Loan Agreement. Accordingly, the Debtor obtained $2,500,000 in loans from Lifespace as Parity Debt under the Loan Agreement (the "**Lifespace Debt**"). The Lifespace Debt is secured pari passu with the assets securing the 2007 Bonds and the Indenture Trustee serves as the agent for perfection of such security interests.

11. Following the negotiations, the Debtor agreed to a term sheet and entered into a Bondholder Restructuring Plan and Support Agreement (the "**Plan Support Agreement**") with Lifespace and holders owning approximately 63% of the outstanding principal amount of the 2007 Bonds.

12. Based upon the terms set forth in the Plan Support Agreement, the Debtor prepared the Disclosure Statement and Plan. On November 18, 2013, the Disclosure Statement, Plan and related documents were distributed to the holders of the 2007 Bonds and to Lifespace for voting (all other creditors of the Debtor did not have their rights altered and were therefore unimpaired under the Plan).

13. A voting deadline of January 6, 2014 was established to cast votes on the Plan.

The Debtor obtained by such deadline the following votes:

| Voting Class | Acceptance | | Rejection | |
| --- | --- | --- | --- | --- |
| | Percentage of Dollars Voting | Percentage of Total Vote | Percentage of Dollars Voting | Percentage of Total Vote |
| **Class 1 Claims** | 98.10% | 90.48% | 1.90% | 9.52% |
| **Class 2 Claims** | 100% | 100% | 0% | 0% |
| **Class 5 Claims** | 100% | 100% | 0% | 0% |

14. Concurrently with this Motion, the Debtor has filed its Debtor's Motion Under 11 U.S.C. §§ 105, 341, 1125, 1126, and 1129 and Fed. R. Bankr. P. 2002, 3017, 3018, and 3020 for an Order (i) Scheduling Combined Hearing on Adequacy of Disclosure Statement and Confirmation of Plan and Approving the Form and Manner of Notice Thereof, (ii) Setting Deadline to Object to Adequacy of the Disclosure Statement and Confirmation of Plan, and (iii) Approving Solicitation of Acceptances on a Plan of Reorganization and Solicitation Procedures With Respect Thereto (the "**Plan Approval Motion**") seeking approval of the Disclosure Statement and confirmation of the Plan.

## RELIEF REQUESTED AND BASIS THEREFORE

15. By this Motion, the Debtor respectfully requests that the Court enter a stipulated interim Order granting the following relief: (i) authorizing the interim use of cash collateral pursuant to Bankruptcy Code §§ 105, 361, 362 and 363, (ii) granting adequate protection to the Indenture Trustee pursuant to Bankruptcy Code §§ 361, 362 and 363, and (iii) scheduling a final hearing.

16. The Debtor believes that cash on hand on the Petition Date and any receivables due to the Debtor secure the obligations under the Loan Agreement, the Indenture and the

Lifespace Debt (the "**Cash Collateral**") and therefore constitute "cash collateral" within the meaning of Bankruptcy Code § 363.  Without access to the Cash Collateral, the Debtor would not have sufficient available cash to continue the operation of the Facility during this Chapter 11 case.  The Cash Collateral will be used to fund the Debtor's various operating expenses and professional fees as well as insurance, taxes, chapter 11 fees and other costs.

17. Bankruptcy Code § 363(c)(2) permits a debtor-in-possession to use, sell, or lease cash collateral only if one of the following conditions is met: "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  The Indenture Trustee on behalf of the holders of the 2007 Bonds and Lifespace has consented to the use of the Cash Collateral pursuant to the terms of the proposed stipulated order attached hereto as "**Exhibit A**" (the "**Proposed Order**").

18. A debtor's use of cash collateral is conditioned on the provision of "adequate protection" of other interests in the property.  11 U.S.C. § 362(e).  "Adequate protection" may include payment of fees or interest, or the granting of replacement liens or administrative claims. *See, e.g., Prudential Ins. Co. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 12 C.B.C.2d 323 (8th Cir. 1985); *Martin v. Commodity Credit Corp.*, 761 F.2d 472, 12 C.B.C.2d 974 (8th Cir. 1985); *In re Masella*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996).  Whether a creditor is adequately protected is decided on a case-by-case basis. *In re American Mariner Indus., Inc.,* 734 F.2d 426, 435 (9th Cir. 1984).  The purpose of adequate protection it to protect secured creditors from diminution of the value of their security interests during the pendency of a bankruptcy case. *Martin v. Commodity Credit Corp.*, 761 F.2d at 474 (citing S.Rep. No. 989, 95th Cong., 2d Sess. 53, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5839; H.R.Rep.

No. 595, 95th Cong., 2d Sess. 339, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6295).

19.     The interests of the Indenture Trustee in the prepetition collateral (including the Cash Collateral) are adequately protected under the Proposed Order.  Under the Proposed Order, Cash Collateral may only be used in accordance with the Budget attached to the Proposed Order as Exhibit 1.  In addition, as adequate protection for any actual diminution in value of the prepetition collateral, including from the use of Cash Collateral, the Debtor proposes the following with respect to the Indenture Trustee (as set forth in the Interim Order):

> 4.     Adequate Protection; Replacement Liens.  The Indenture Trustee is entitled, pursuant to Bankruptcy Code §§ 361 and 363(e), to adequate protection of its interests in the Prepetition Collateral, including, but not limited to, the Cash Collateral, for any diminution in value of its interests in the Prepetition Collateral, including, without limitation, any such diminution resulting from the Debtor's use of Cash Collateral and any other Prepetition Collateral and the imposition of the automatic stay pursuant to Bankruptcy Code § 362.  As security for and solely to the extent of any diminution in the value of the Indenture Trustee's Prepetition Collateral from and after the Petition Date, calculated in accordance with Bankruptcy Code § 506(a) (a "**Diminution in Value**"), the Indenture Trustee is hereby granted senior priority replacement liens upon all assets and property of the Debtor and its estate of any kind or nature whatsoever, now existing or hereafter acquired, including, without limitation, the Prepetition Collateral (the "**Replacement Liens**"), but excluding all claims and causes of action, and the products and proceeds thereof, arising under or permitted by Bankruptcy Code §§ 502(d), 506(c), 544, 545, 547, 548, 549 and 550 and any other avoidance claims and causes of action arising under state or federal law; provided, however, that the Replacement Liens shall be subject and subordinate to (a) the Carve-Out (defined below), and (b) the Prior Senior Liens.  The Replacement Liens so granted are in addition to all security interests, liens, and rights of setoff existing in favor of the Indenture Trustee on the Petition Date, and are and shall be valid, perfected, enforceable and effective as of the Petition Date without any further action of the Debtor or the Indenture Trustee and without the necessity of the execution, filing or recording of any financing statements, security agreements, mortgages, or other documents, or of obtaining control agreements over bank accounts.  Notwithstanding the foregoing, the Indenture Trustee is hereby authorized, but not required, to file or record any financing statements, security agreements, mortgages, or other documents in any jurisdiction or take any other action in order to validate and perfect the Replacement Liens granted hereunder.
>
> 5.     Adequate Protection; 507(b) Priority Claim.  The Indenture Trustee is hereby granted an administrative claim with a priority equivalent to a claim under Bankruptcy Code §§ 364(c)(1), 503(b) and 507(b), on a dollar-for-dollar basis for and solely to the extent of any Diminution in Value, which administrative claim shall, among other things, have priority over all other costs and expenses of the kind specified in, or ordered

pursuant to, Bankruptcy Code §§ 105, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 1113 and 1114 (the "**Super-Priority Administrative Claim**"), except for expenditures constituting the Carve-Out.

6. <u>Adequate Protection; Fees and Expenses</u>.  The Debtor is hereby authorized and directed to pay the reasonable fees and expenses of Indenture Trustee's outside legal and financial advisors in accordance with the Budget, with any balance due to the Indenture Trustee's professionals and the Indenture Trustee's internal fees and expenses to be paid through deductions made by the Indenture Trustee and its professionals from (a) any expense retainers funded by the Debtor prior to the Petition Date and/or (b) the Trustee-Held Funds in accordance with the Bond Financing Documents.  Notwithstanding the foregoing, the Indenture Trustee reserves its right to assert claims for the payment of additional amounts provided for in the Bond Financing Documents, and to seek additional or further adequate protection from the Court.

7. <u>Carve-Out</u>.  The Replacement Liens and Super-Priority Administrative Claim granted hereunder shall be junior and subordinate to the following fees and expenses (the "**Carve-Out**"):  (a) all accrued but unpaid fees and expenses (the "**Professional Fees and Expenses**") of the attorneys, accountants or other professionals retained by the Debtor and any statutory committee of unsecured creditors (including, without limitation, any committee of residents) appointed in the Chapter 11 case under Bankruptcy Code §§ 327 or 1103(a) (the "**Committee**") (collectively, the "**Professionals**"), allocable to the Debtor under and to the extent set forth in the Budget and incurred prior to the delivery of a Termination Notice; (b) Professional Fees and Expenses in the amount of $50,000.00 incurred after delivery of a Termination Notice; and (c) the payment of fees pursuant to 28 U.S.C. § 1930 to the extent related to the Chapter 11 case of the Debtor, provided that all such fees and expenses shall be subject to approval by a final order of the Court pursuant to Bankruptcy Code §§ 326, 328, 330, 331 or 363.  Notwithstanding anything to the contrary set forth herein, no Cash Collateral nor any portion of the Carve-Out may be used to prosecute actions, claims, demands or causes of action against the Indenture Trustee, or to object to or contest in any manner, or to raise any defense in any pleading to the validity, perfection, priority or enforceability of the Indenture Trustee's liens and security interests against the Prepetition Collateral or the Replacement Liens.

[Proposed Order ¶¶ 4-7.]

20. The Debtor submits that the adequate protection provided under the Proposed Order sufficiently supports the proposed use of the Cash Collateral, is fair and reasonable, and satisfies the requirements of Bankruptcy Code §§ 362(c)(2) and (e). Accordingly, based upon the foregoing, the Debtor respectfully requests that the Court authorize the Debtor to provide adequate protection to the Indenture Trustee in accordance with the terms set forth in the Interim Order.

## NOTICE

21.     The Debtor has provided notice of this Motion by mail, facsimile or overnight delivery to: (a) the United States Trustee for the Southern District of Iowa; (b) counsel to UMB Bank, National Association, as trustee, (c) Lifespace Communities, Inc., (d) the Debtor's twenty (20) largest unsecured creditors; and (e) parties who have filed a request for service of notice in accordance with Bankruptcy Rule 2002.  The Debtor submits that, under the circumstances, no other or further notice is required.

WHEREFORE, the Debtor respectfully requests that this Court grant the relief requested hearing and grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated:  January 10, 2014 | **DORSEY & WHITNEY LLP**<br>*/s/ William J. Miller*<br>William Miller (IA Bar No. AT0005415)<br>801 Grand Avenue, Suite 4100<br>Des Moines, IA  50309<br>Telephone: (515) 283-1000<br>Facsimile: (515) 283-1060<br>E-mail: miller.william@dorsey.com<br><br>-and-<br><br>**DORSEY & WHITNEY LLP**<br><br>Steven J. Heim (pro hac vice admission pending)<br>Erin Knapp Darda (pro hac vice admission pending)<br>Suite 1500, 50 South Sixth Street<br>Minneapolis, MN 55402-1498<br>Telephone (612) 340-2600<br>Facsimile (612) 340-2868<br>E-mail: heim.steven@dorsey.com<br>darda.erin@dorsey.com<br><br><br>*Proposed Counsel to the Debtor and Debtor in Possession* |

**Exhibit A**

**[Proposed] Stipulated Interim Order: (1) Authorizing Interim Use of Cash Collateral; (2) Granting Adequate Protection to Indenture Trustee; and (3) Scheduling a Final Hearing**

**Exhibit B**

**Indenture**

**Exhibit C**

**Loan Agreement**

**Exhibit D**

**Mortgage**