## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | Case No. 14-00052-11 |
| | ) | |
| | ) | Chapter 11 |
| **DEERFIELD RETIREMENT** | ) | |
| **COMMUNITY, INC.,** | ) | |
| | ) | Judge: |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S MOTION UNDER 11 U.S.C. §§ 105, 341, 1125, 1126, AND 1129 AND FED. R. BANKR. P. 2002, 3017, 3018, AND 3020 FOR AN ORDER (I) SCHEDULING COMBINED HEARING ON ADEQUACY OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (II) SETTING DEADLINE TO OBJECT TO ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN, (III) APPROVING SOLICITATION OF ACCEPTANCES ON A PLAN OF REORGANIZATION AND SOLICITATION PROCEDURES WITH RESPECT THERETO**

Deerfield Retirement Community, Inc., the debtor and debtor-in-possession in the above-captioned bankruptcy case (the "**Debtor**"), by and through its proposed undersigned counsel, hereby submits this motion pursuant to sections 105, 341, 1125, 1126 and 1129 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for an order: (i) scheduling a combined hearing (the "**Combined Hearing**") on adequacy of the Disclosure Statement for Solicitation of Acceptances of a Prepackaged Plan of Reorganization for Deerfield Retirement Community, Inc. (including any supplements and annexes thereto, the "**Disclosure Statement**") and confirmation of the Prepackaged Plan of Reorganization of Deerfield Retirement Community, Inc. dated November 18, 2013 (the "**Plan**") and approving the form and manner of notice thereof; (ii) setting the deadline to object to the adequacy of the Disclosure Statement and

confirmation of the Plan (the "**Objection Deadline**"); and (iii) approving solicitation procedures (the "**Solicitation Procedures**") with respect to the Plan (the "**Motion**").

This Motion is based on the arguments and legal authority set forth herein, the Declaration of Scott Harrison in Support of Chapter 11 Petition and First Day Pleadings (the "**Harrison Declaration**") filed concurrently herewith and incorporated herein by reference, the pleadings and papers on file herein, and such oral and documentary evidence as may be presented at the hearing on the Motion.  In support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      On January 10, 2014 (the "**Petition Date**"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

2.      The Debtor has continued in possession and management of its property and operates its business as debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108. No trustee or examiner has been appointed in this case.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Debtor's chapter 11 case (the "**Case**") is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are Bankruptcy Code §§ 105, 341, 1125, 1126, and 1129, and Bankruptcy Rules 2002, 3017, 3018 and 3020.

## BACKGROUND

5.        The Debtor was formed as a nonprofit corporation in Iowa in 2000 for the purpose

of owning and operating a life care retirement community known as "<u>Deerfield Retirement</u>

<u>Community</u>" located at 13731 Hickman Road, Urbandale, Iowa (the "**<u>Facility</u>**").

6.        The Facility is comprised of 32 townhomes and 138 independent living

apartments, common areas, a residential care facility with 24 residential care living units, and a

health center with 30 skilled nursing care beds.

7.        As a nonprofit corporation, the Debtor does not have shareholders.  The Debtor's

sole "member" is Lifespace Communities, Inc. ("**<u>Lifespace</u>**"), whose sole benefit is that in a

liquidation all proceeds after payments to the Debtor's creditors are made, are directed to be paid

to Lifespace so long as Lifespace is then a 501(c)(3) nonprofit entity.  Lifespace itself is

currently an Iowa nonprofit corporation.

8.        Lifespace currently provides management services to the Debtor at the Facility in

exchange for a monthly management fee equal to 5% of the Debtor's revenues pursuant to an

Amended and Restated Management Agreement (the "**<u>Management Agreement</u>**").  Lifespace

also provides management services to 11 other continuing care retirement communities in six

other states.  In total, Lifespace provides management services to over 5,000 residents.

### A.  Capital Structure

9.        To finance the construction and development of the Facility, the Debtor had the

Iowa Finance Authority issue its Revenue Bonds (Deerfield Retirement Community, Inc.

Project) Series 2003A and Series 2003B (the "**<u>2003 Bonds</u>**").  In 2007, the Debtor repaid the

2003 Bonds through the issuance by the Iowa Finance Authority of its (i) Senior Living Facility

Revenue Refunding Bonds (Deerfield Retirement Community, Inc.) Series 2007A in the original

principal amount of $40,955,000 and (ii) Senior Living Facility Revenue Refunding Bonds

(Deerfield Retirement Community, Inc.) Series 2007B Extendable Rate Adjustable Securities in

the original principal amount of $3,210,000 (collectively, the "**2007 Bonds**"), pursuant to an

Indenture of Trust dated as of May 1, 2007 (the "**Indenture**") between the Iowa Finance

Authority and Bankers Trust Company, N.A. as trustee.  As of the Petition Date, the

Series 2007A Bonds are outstanding in an aggregate principal amount of $37,715,000 and the

Series 2007B Bonds are outstanding in an aggregate principal amount of $3,210,000.

10.     Under that certain Loan Agreement dated as of May 1, 2007 (the "**Loan

Agreement**") between the Debtor and the Iowa Finance Authority, the Debtor became obligated

to make payments sufficient to discharge the 2007 Bonds as they became due.  To secure the

Debtor's obligations under the Loan Agreement and its obligations under certain parity debt, the

Debtor (i) granted a security interest in all income, revenues, receipts and other moneys received

by or on behalf of the Debtor from the Facility or its operations and all rights to receive the same,

with certain exceptions and (ii) executed a Mortgage, Security Agreement, Assignment of Rents

and Leases and Fixture Financing Statement, dated as of May 1, 2007, granting (i) a mortgage

lien on the real property associated with the Facility, and (ii) a security interest in the personal

property and fixtures included in the Facility.

11.     To provide support to the Debtor, Lifespace entered into (i) that certain

Subordinated Loan Agreement dated as of May 15, 2007 between Lifespace, the Debtor and the

trustee under the Indenture (the "**Bond Trustee**") pursuant to which Lifespace provided

$4,300,000 of subordinated loans to the Debtor and (ii) that certain Support Agreement dated as

of May 1, 2007 among the Debtor, Lifespace and the Bond Trustee pursuant to which Lifespace

provided $3,000,000 of advances to the Debtor.  As of the Petition Date, the Debtor owes

Lifespace an approximate amount of (i) $6,600,000 in principal and interest under the Subordinated Loan Agreement, (ii) $3,000,000 under the Support Agreement and (iii) $8,900,000 in respect of other additional advances made by Lifespace to the Debtor from time to time.

### B. Events Leading to Bankruptcy Filing

12.     The recent economic downturn had significant adverse impacts on the Debtor. Many factors, including the steep decline in the residential real estate market, which impaired the ability of some potential residents to sell their houses and then move into the Facility, and increased competition, resulted in the Debtor's failure to attract residents as quickly as was forecasted. This slower occupancy and the resulting utilization of working capital to fund debt service meant less revenue and cash available for the Debtor to pay operating expenses.

13.     In April 2013, the Debtor commenced discussions with certain holders of the 2007 Bonds regarding a restructuring of the bond debt. These discussions accelerated in June 2013 when the Debtor failed to make its monthly payments to the Bond Trustee under the Loan Agreement, which was an event of default under the Indenture and the 2007 Bonds.

14.     A group of the holders of the majority of the outstanding 2007 Bonds entered into a forbearance agreement with the Debtor while such negotiations were on-going and such bondholders agreed to certain modifications to the Loan Agreement to allow Lifespace to make certain advances to the Debtor as secured "Parity Debt" under the Loan Agreement. Accordingly, the Debtor obtained $2,500,000 in loans from Lifespace as Parity Debt under the Loan Agreement.

15.     Following the negotiations, the Debtor agreed to a term sheet and entered into a Bondholder Restructuring Plan and Support Agreement (the "**Plan Support Agreement**") with

Lifespace and holders owning approximately 63% of the outstanding principal amount of the 2007 Bonds.

16.      Based upon the terms set forth in the Plan Support Agreement, the Debtor prepared the Disclosure Statement and Plan.  On November 18, 2013, the Disclosure Statement, Plan and related documents were distributed to the holders of the 2007 Bonds and to Lifespace for voting (all other creditors of the Debtor did not have their rights altered and were therefor unimpaired under the Plan).

17.      A voting deadline of January 6, 2014 was established to cast votes on the Plan. the Debtor obtained by such deadline the following votes:

| Voting Class | Acceptance | | Rejection | |
|---|---|---|---|---|
| | Percentage of Dollars Voting | Percentage of Total Vote | Percentage of Dollars Voting | Percentage of Total Vote |
| Class 1 Claims | 98.10% | 90.48% | 1.90% | 9.52% |
| Class 2 Claims | 100% | 100% | 0% | 0% |
| Class 5 Claims | 100% | 100% | 0% | 0% |

**Relief Requested and Basis Therefore**

18.      By this Motion, the Debtor respectfully requests that the Court enter an order granting the following relief: (i) scheduling a Combined Hearing on adequacy of the Disclosure Statement and the Plan and approving the form and manner of notice thereof; (ii) setting the Objection Deadline; and (iii) approving solicitation procedures with respect to the Plan.

19.      Below is a table setting forth the dates relevant to the pre-petition solicitation procedures employed by the Debtor and setting forth the Debtor's proposed dates for (a) the

mailing of notice of the Combined Hearing (the "**Combined Hearing Notice**"), (b) the

Combined Hearing, and (c) the Objection Deadline, among other things.

| Timetable | |
|---|---|
| Voting Record Date | 5:00 P.M. (prevailing Eastern Time) on November 15, 2013 |
| Distribution of Solicitation Packages | November 18, 2013 |
| Voting Deadline | 5:00 P.M. (prevailing Eastern Time) on January 6, 2014 |
| Petition Date | January 10, 2014 |
| Distribution of Combined Hearing Notice | As soon as practicable, but in any event at least thirty (30) calendar days prior to the Objection Deadline |
| Objection Deadline | Seven (7) calendar days prior to the Combined Hearing |
| Reply Deadline | Two (2) business days prior to the Combined Hearing |
| Combined Hearing | A date convenient for the Court between February 18, 2014 and March 7, 2014 |

I.    **The Court Should Approve the Debtor's Request to Hold a Combined Hearing With Respect to the Adequacy of the Disclosure Statement and Confirmation of the Plan**

20.    Bankruptcy Code § 105(d)(2)(B)(vi) expressly authorizes holding a combined

hearing on approval of both a disclosure statement and confirmation of a plan of reorganization.

Such combined hearings are common in prepackaged bankruptcy cases and are occasionally held

in other cases as well.  *See, e.g.*, *In re AR Broadcasting Holdings, Inc.*, Case No. 11-13674

(Bankr. D. Del. 2011) (prepackaged case); *In re CIT Group, Inc.*, Case No. 09-16565 (Bankr.

S.D.N.Y. 2009) (prepackaged case); *In re Combustion Engineering, Inc.*, Case No. 03-10495

(MFW) (Bankr. D. Del. Feb. 26, 2003) (Docket No. 52) (prepackaged case). *See also In re Trailer Bridge, Inc.*, Case No. 11-08348 (JAF) (Bankr. M.D. Fla. Feb. 3, 2012) (non-prepackaged non-small business case); *In re a21, Inc*., Case No. 08-07610 (PMG) (Bankr. M.D. Fla. Dec. 29, 2008) (Docket No. 92) (pre-negotiated plan; non-prepackaged non-small business case).

21.     As part of its calculus in analyzing how best to restructure its debt obligations, the Debtor determined that a lengthy chapter 11 proceeding would harm its ongoing business operations and decrease its going concern value.  As the Debtor's main business obstacle has been obtaining and maintaining the necessary occupancy levels to generate sufficient revenues to service its debt, a lengthy stay in bankruptcy would only exacerbate this problem.  Potential new residents at the Facility would likely be wary of making a significant financial commitment to an entity that is the subject of a Chapter 11 proceeding.  By using the prepackage reorganization structure, the Debtor and the Consenting Bondholders hoped to minimize the negative impacts from the Debtor's Chapter 11 proceeding by making the stay in bankruptcy short.  Permitting a combined hearing on the Plan and Disclosure Statement would promote judicial economy, expedite the Debtor's successful reorganization and emergence from bankruptcy, minimize the negative effects of the bankruptcy filing on the Debtor's business, mitigate the unnecessary cost and disruption of the bankruptcy proceedings, and provide creditors and interest holders with the greatest opportunity to maximize their recovery and distributions.

## II.    The Court Should Approve the Form of the Combined Hearing Notice, the Dates Contained Therein and the Procedures for Disseminating such Combined Hearing Notice

### A.    The Combined Hearing Notice Provides Parties in Interest with Sufficient Information

22.     The Debtor requests approval of the Combined Hearing Notice substantially in the form of **Exhibit A** attached hereto.  The Combined Hearing Notice contained the following information:

- The deadline to submit objections to approval of the adequacy of the Disclosure Statement and confirmation of the Plan and the procedures to follow in submitting any such objections

- The hearing date for approval of the adequacy of the Disclosure Statement and confirmation of the Plan

- A summary of the terms of the Plan

- Where parties in interest can obtain full copies of the Disclosure Statement, Plan and related documents

23.     The Debtor believes that service of the Combined Hearing Notice in this manner will provide sufficient notice of the Combined Hearing and all applicable objection deadlines and requirements.

### B.    The Dates Set in the Combined Hearing Notice Meet the Bankruptcy Code and Bankruptcy Rule Requirements

24.     Bankruptcy Rule 3017(a) requires no less than 28 days' notice to the debtor, creditors, equity holders and all other parties in interest to consider the Disclosure Statement and objections thereto.  Similarly, Bankruptcy Rules 2002(b) and (d) require no less than 28 days' notice to all holders of claims and equity holders of the time fixed for filing objections to the hearing on confirmation of a chapter 11 plan.  To satisfy these requirements, the Debtor will serve the Combined Hearing Notice on all known holders of claims and interests and all other parties entitled to notice in this chapter 11 case (regardless of whether such parties were entitled

to vote to accept or reject the Plan) at least thirty (30) days' notice of the Objection Deadline,

which is more than the minimum 28 days' notice requirement. The time frame is more than

sufficient since parties in interest who are having their rights altered by the Plan have already

been in possession of the Disclosure Statement and Plan since mid-November.

### C. The Procedures for Disseminating the Combined Hearing Disclosure Comply with the Bankruptcy Code and Bankruptcy Rules

25.     The Debtor proposes that the Combined Hearing Notice will be served by

electronic mail, facsimile, and/or first-class mail upon the Debtor's creditor matrix and all

interest holders of record, which service will occur promptly after the entry of the order

approving the relief requested in this Motion. In addition, the Combined Hearing Notice will be

served upon: (a) the Office of the United States Trustee for the Southern District of Iowa; and (b)

counsel to the parties to the Plan Support Agreement.

26.     The Debtor maintains that the service of the Combined Hearing Notice as

described above will provide sufficient notice to all parties in interest of the date, time and place

of the Combined Hearing, and the procedures for objecting to the adequacy of the Disclosure

Statement and/or confirmation of the Plan.

27.     To the extent applicable, the Debtor requests a waiver of the requirement under

Bankruptcy Rule 3017 that the Debtor mail a copy of the Disclosure Statement and Plan with the

Combined Hearing Notice. The Debtor solicited acceptances and rejections of the Plan prior to

the Petition Date, and before the Disclosure Statement had been "approved". As a consequence,

Bankruptcy Rule 3017(b) is not applicable as such provision applies only "upon approval of the

Disclosure Statement". To the extent this Court determines that Bankruptcy Rule 3017(b) could

be construed to require the further dissemination of the Disclosure Statement and Plan, the

Debtor requests (i) that the Court exercise its discretion allowed under Bankruptcy Rule 3017(b)

to waive such requirements as to parties in the unimpaired classes under the Plan and (ii) waive the requirement to send a second copy to those impaired parties that already had received a copy of the Disclosure Statement and Plan as in both cases, it would be both costly and unnecessarily burdensome on the Debtor to disseminate the over 500 pages worth of documents to parties whose rights will not be impacted by such documents or to parties who have already received such documents.  The Debtor intends to provide the Combined Hearing Notice to all holders of claims or interests, and submits that this notice is sufficient and appropriate since it will indicate where interested parties can obtain full copies of the Disclosure Statement, Plan and related documents if they should care to receive such documents.

### III.    Approval of the Debtor's Pre-Bankruptcy Solicitation and the Solicitation Procedures

#### A.  The Court Should Approve the Pre-Bankruptcy Solicitation

28.     By this Motion, the Debtor also seeks a determination from this Court that the Solicitation Procedures provided adequate information in accordance with Bankruptcy Code § 1126(b) and the Bankruptcy Rules.  Bankruptcy Code § 1125(b) provides that acceptance or rejection of a plan may not be solicited after the commencement of a bankruptcy case unless, after notice and a hearing, the Court approves a written disclosure statement as containing adequate information.   Bankruptcy Code § 1125(g), however, provides:

> Notwithstanding subsection (b), an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.

As described above, the Debtor initiated its solicitation of acceptances of the Plan prior to the commencement of this Case.  That solicitation process complied with applicable nonbankruptcy law.

29.     The Debtor, through its voting agent, Globic Advisors (the "**Voting Agent**"),

commenced the solicitation on November 18, 2013 and caused copies of the Disclosure

Statement and the Plan (attached as an exhibit to the Disclosure Statement) and the appropriate

Ballot (as defined below) (together, a "**Solicitation Package**") to be transmitted to the agents or

nominees for the beneficial holders of the 2007 Bonds (provided, however, certain agents or

nominees provided the Voting Agent separate instructions to send the Solicitation Package

directly to the beneficial holders of the 2007 Bonds, which directions the Voting Agent

followed).  Solicitation Packages were sent directly to Lifespace, the only other holder of an

impaired claim.

30.     The Debtor has not filed a registration statement under the Securities Act of 1933,

15 U.S.C. §§ 77(a)-77(b) (as amended from time to time, the "**Securities Act**") or under any

other federal or state securities or "blue sky" laws ("**Blue Sky Laws**"), with the Securities and

Exchange Commission or any other similar agency.  However, the Debtor submits that its

solicitation falls within one or more of the exceptions from registration contained in sections

3(a)(9) and 4(2) of the Securities Act and related state and federal regulations and provisions.

Section 3(a)(9) of the Securities Act exempts from registration "any security exchanged by the

issuer with its existing security holders exclusively where no commission or other remuneration

is paid or given directly or indirectly for soliciting such exchange." 15 U.S.C. § 77c(a)(9).  In

addition, Section 3(a)(9) of the Securities Act provides that any state Blue Sky Law requirements

shall not apply to such an exchange.  Here, "no commission or other remuneration" is being

"paid or given directly or indirectly for soliciting such exchange."  *Id*.  Therefore, the Debtor's

solicitation complies with applicable nonbankruptcy law and may be continued pursuant to

Bankruptcy Code § 1125(g).  Thus, pursuant to Bankruptcy Code §§ 1126(b) and 1125(g), the

Debtor should be permitted to count any acceptances or rejections received prior to approval of the Disclosure Statement.

**B.   The Court Should Approve the Pre-Petition Solicitation Procedures**

31.    The Debtor seeks this Court's determination that the Solicitation Procedures comply with the Bankruptcy Code.

**i.    First Lien Bond Claims**

32.    Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by [Bankruptcy Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of the procedures, and enter any orders the court deems appropriate."

33.    The 2007 Bonds are technically held through the Depositary Trust Company or its nominee ("**DTC**").  DTC has identified to the Debtor and the Voting Agent its "participants" (the "**Participants**") that according to DTC's records hold for themselves or as nominee beneficial interests in the 2007 Bonds and DTC provided to the Debtor a proxy to allow such beneficial bondholders through the Participants to vote on the Plan.  The Debtor through the Voting Agent thus served the Solicitation Packages on those Participants there were holders of record as of the Record Date in a manner customary in the securities industry (provided, however, certain of the Participants also identified to the Voting Agent the beneficial holders of the 2007 Bonds and the Voting Agent directly delivered the Solicitation Packages to such beneficial holders).  Therefore, on or about November 18, 2013, the Voting Agent transmitted the Solicitation Packages by overnight courier or hand delivery and electronic mail to all Participants and the beneficial holders identified by such Participants.  In addition, the Debtor instructed each Participant to distribute the Solicitation Packages to the beneficial owners for which the Participant held 2007

Bonds promptly upon receipt of the Solicitation Packages from the Voting Agent. Participants were provided with a deadline to complete and return their Master Ballots to the Voting Agent by 5:00 p.m. Eastern Time on January 6, 2014. These procedures are outlined in detail in the tabulation certificate provided by the Voting Agent and attached hereto as **Exhibit C** (the "**Voting Report**").

      **ii.**      **First Lien Lifespace Claims; Lifespace Unsecured Claims**

34.     The Solicitation Package and the Ballots for Class 2 and Class 5 claims held by Lifespace were sent directly to Lifespace by the Debtor. Lifespace timely completed and submitted its Ballots to the Voting Agent.

      **iii.**     **Classes of Claims and Interests that are Conclusively Presumed to Accept the Plan**

35.     Holders of Claims in Classes 3, 4, 6, 7 and 8 are unimpaired under the Plan and, therefore, pursuant to Bankruptcy Code § 1126(f), are conclusively presumed to have accepted the Plan. Therefore, the Debtor did not solicit votes from Classes 3, 4, 6, 7 and 8 and did not distribute a Solicitation Package to such parties. Delivery of such information would have only created confusion on the part of such unimpaired creditors.

      **iv.**      **Approval of Form of Ballot**

36.     Bankruptcy Rule 3017(d) requires the Debtor to deliver a ballot substantially conforming to Official Form 14, to "creditors and equity security holders entitled to vote on the plan." The Debtor distributed ballots in the form attached hereto as **Exhibits B-1, B-2, B-3 and B-4** (collectively, the "**Ballots**"), to Participants or holders, as applicable, of claims in Classes 1, 2 and 5, respectively, entitled to vote on the Plan. The Debtor submits that the form of the Ballots satisfies Bankruptcy Rule 3017(d) and should be approved.

### v.      Approval of Voting Record Date and Voting Deadline

37.      Bankruptcy Rule 3017(c) provides in relevant part that, on or before approval of a disclosure statement, the court "shall fix a time within which the holders of claims and equity interests may accept or reject the plan."  Pursuant to Bankruptcy Rule 3018(b), a holder of a claim or equity security will not be deemed to have accepted or rejected the plan "if the court finds after notice and a hearing […] that an unreasonably short time was prescribed for such creditors and equity security holders to accept or reject the plan."

38.      Here, the Solicitation Packages clearly identified 5:00 p.m. prevailing Eastern Time on November 15, 2013, as the record date and the holders of Class 1, 2 and 5 claims were provided with 49 calendar days (33 business days) between the date Solicitation Packages were first distributed and the Voting Deadline to cast their votes.  Therefore, the time period for creditors to accept or reject the Plan was not "unreasonably short" and the solicitation is in compliance with Bankruptcy Rule 3018(b).

39.      Bankruptcy Rule 3017(d) provides in relevant part that the "date the order approving the disclosure statement is entered" shall be the record date for determining the "holders of stock, bonds, debentures, notes, and other securities" entitled to receive the materials specified in Bankruptcy Rule 3017(d), unless another date is fixed by the court.  The Debtor requests that the Court establish a record date of 5:00 P.M. (prevailing Eastern Time) on November 15, 2013 (the "**Record Date**") for the purpose of determining which Holders of Class 1, 2 and 5 Claims were entitled to vote on the Plan. As a result, in order to vote on the Plan, a party was required to hold Class 1, 2 and 5 Claims as of the applicable Voting Deadline.

### vi.      Approval of Procedures for Vote Tabulation

40.      Bankruptcy Code § 1126(c) provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected the plan.

Further, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." The Voting Report is attached hereto.

41.     The Debtor requests that the Court approve its vote tabulation methodology as set forth in the Voting Report (copies of all the ballots are included therewith). The Voting Agent has not reported any inadequacies with respect to the ballots it received and has counted all ballots The Debtor maintains that this methodology complies with Bankruptcy Code § 1126(c).

### C. The Disclosure Statement Contains Adequate Information

42.     At the Combined Hearing, the Debtor will seek a ruling from the Court that the Debtor's prepetition solicitation complied with Bankruptcy Code § 1126(b)(2) by providing adequate information within the meaning of Bankruptcy Code § 1125(a)(1). "Adequate information" is defined in Bankruptcy Code § 1125(a)(1) as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.

43.     A bankruptcy court has broad discretion in its determination as to the adequacy of information contained in a disclosure statement. *See Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988); *In re Dakota Rail*, 104 B.R. 138, 142 (Bankr. D. Minn. 1989) (court has "wide discretion to determine [ . . . ] whether a

disclosure statement contains adequate information, without burdensome, unnecessary, and

cumbersome detail").   The Debtor's Disclosure Statement contained the following information

- A description of the Debtor's business
- The circumstances that gave rise to the filing of the bankruptcy petition
- A description of the classes of claims and treatment under the Plan
- A full copy of the Plan of Reorganization
- A description of the means for implementation of the Plan
- Full copies of the 2014 Bond Indenture, 2014 Loan Agreement and the 2014 Mortgage
- A copy of the Exchange Disclosure Document (similar to an Official Statement used in connection with tax exempt bond issuances) containing information regarding the 2014 Bonds and risks factors related thereto
- Alternatives to the Plan
- A liquidation analysis setting forth the estimated return that creditors would receive under chapter 7
- The 2012 audited financial statements of the Debtor and certain financials of the Debtor as of September 30, 2013 (contained in the Exchange Disclosure)
- Projected financial information that would be relevant to creditors' determinations of whether to accept or reject the plan
- Information relevant to the risks being taken by the creditors


44.     The Debtor submits that the Disclosure Statement contains "adequate

information" under Bankruptcy Code § 1125. Therefore, the Debtor respectfully requests that the

Court approve the solicitation procedures as employed by the Debtor prepetition.

**D. Confirmation of Plan**

45.     The Debtor submits that the Plan satisfies all requirements for confirmation under

the Bankruptcy Code.  The Debtor has requested that the Court schedule the Combined Hearing,

at which time the Debtor will request confirmation of the Plan. Prior to the date of the Combined

Hearing, the Debtor will file one or more briefs (a) demonstrating that the Plan satisfies each

requirement for confirmation and (b) responding to objections to confirmation, if any.

**NOTICE**

46.     The Debtor has provided notice of this Motion by mail, facsimile or overnight

delivery to: (a) the Office of the United States Trustee for the Southern District of Iowa; (b) the

creditors holding the 20 Largest Unsecured Claims; and (c) counsel to the parties to the Plan

Support Agreement.  The Debtor submits that, in light of the nature of the relief requested, no

other or further notice is necessary or required.

47.     Since the Solicitation Packages were disseminated, the Debtor has discovered a

few minor typographical errors or inconstancies in the Disclosure Statement and Plan.   Marked

pages showing these errors or inconsistencies are attached hereto as **Exhibit D.**  These errors and

inconsistencies are of a de minimis nature and the Debtor requests that the Court consider the

approval of the Disclosure Statement and Plan taking into account these corrections under

Bankruptcy Code § 1127.  These modifications are sufficiently minor that a re-solicitaiton of the

votes on the Plan is not required.

<u>**CONCLUSION**</u>

WHEREFORE, the Debtor respectfully requests that this Court grant the relief requested

herein and grant such other and further relief as is just and proper.

Respectfully Submitted,

Dated:  January 10, 2014                    **DORSEY & WHITNEY LLP**

*/s/ William J. Miller*
William Miller (IA Bar No. AT0005415)
801 Grand Avenue, Suite 4100
Des Moines, IA  50309
Telephone: (515) 283-1000
Facsimile: (515) 283-1060
E-mail: miller.william@dorsey.com

-and-

**DORSEY & WHITNEY LLP**

Steven J. Heim (pro hac vice admission
pending)
Erin Knapp Darda (pro hac vice admission
pending)
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone (612) 340-2600
Facsimile (612) 340-2868
E-mail: heim.steven@dorsey.com
darda.erin@dorsey.com

*Proposed Counsel to the Debtor and
Debtor in Possession*

**EXHIBIT A**

**SUMMARY OF PLAN OF REORGANIZATION AND**
**NOTICE OF COMBINED HEARING ON (A) DISCLOSURE STATEMENT AND**
**(B) CONFIRMATION OF PLAN OF REORGANIZATION AND RELATED MATTERS**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) | Case No. 14-00052-11 |
| | ) | |
| | ) | Chapter 11 |
| **DEERFIELD RETIREMENT** | ) | |
| **COMMUNITY, INC.,** | ) | |
| | ) | Judge: |
| Debtor. | ) | |
| | ) | |

**SUMMARY OF PLAN OF REORGANIZATION AND**
**NOTICE OF COMBINED HEARING ON (A) DISCLOSURE STATEMENT AND**
**(B) CONFIRMATION OF PLAN OF REORGANIZATION AND RELATED MATTERS**

  **NOTICE IS HEREBY GIVEN** as follows:

  On January 10, 2014, Deerfield Retirement Community, Inc. (the "**Debtor**") filed a voluntary chapter 11 bankruptcy petition, Disclosure Statement for Solicitation of Acceptances of a Prepackaged Plan of Reorganization for Deerfield Retirement Community, Inc. (including any supplements and annexes thereto, the "**Disclosure Statement**"), and Prepackaged Plan of Reorganization of Deerfield Retirement Community, Inc. dated November 18, 2013 (the "**Plan**"), among other things, with the United States Bankruptcy Court for the Southern District of Iowa (the "**Court**").

  Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtor's counsel at the address specified below or from Globic Advisors (the "**Voting Agent**" at the following address:

**Globic Advisors**
**One Liberty Plaza, 23rd Floor**
**New York, NY 10006**
**Attn: Robert Stevens**
**E-mail: rstevens@globic.com**
**Telephone: 1-800-974-5771**
**Facsimile: (212) 271-3252**

  In summary, the Plan seeks to reduce the Debtor's outstanding debt by reducing the bond debt outstanding and eliminating certain obligations owing to Lifespace Communities, Inc.  The Debtor's residents and trade creditors will not have their rights altered under the Plan  Each such shall retain their rights as if no bankruptcy case had been commenced.  Each Holder of the Series 2007 Bonds will receive for each $1,000 of principal amount of Series 2007 Bonds held (i) $580 in principal amount of Series 2014A Bonds and (ii) $108.80 in principal amount of the Series

2014B Bonds.  All parties in interest are encouraged to review the Plan and Disclosure Statement for a complete explanation of the terms of the Plan.

### Combined Hearing on Confirmation of the Plan
### and the Adequacy of the Disclosure Statement

The hearing to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Court shall be held before the Honorable _____, United States Bankruptcy Judge, in Room __ of the United States Bankruptcy Court for the Southern District of Iowa at _____, on _____, 2014, at _____ _.m. (prevailing Central Time) (the "Combined Hearing"). The Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Combined Hearing and which notice will be available on the electronic case filing docket.

Objections must be filed with the Court and served so as to be **actually received** no later than _____, 2014, at 5:00 p.m. (prevailing Central Time), by: (a) proposed counsel for the Debtor at Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, Attn:  Steven Heim; (b) counsel to any statutory committee appointed in this chapter 11 cases; and (c) Office of the United States Trustee,.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.  YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN.**

Dated:  January 10, 2014                    **DORSEY & WHITNEY LLP**

                                            */s/ William J. Miller*
                                            William Miller (IA Bar No. AT0005415)
                                            801 Grand Avenue, Suite 4100
                                            Des Moines, IA  19801
                                            Telephone: (515) 283-1000
                                            Facsimile: (515) 283-1060
                                            E-mail: miller.william@dorsey.com

                                            -and-

                                            **DORSEY & WHITNEY LLP**

                                            Steven J. Heim (pro hac vice admission
                                            pending)
                                            Erin Knapp Darda (pro hac vice admission
                                            pending)
                                            Suite 1500, 50 South Sixth Street
                                            Minneapolis, MN 55402-1498
                                            Telephone (612) 340-2600
                                            Facsimile (612) 340-2868
                                            E-mail: heim.steven@dorsey.com
                                            darda.erin@dorsey.com

                                            *Proposed Counsel to the Debtor and
                                            Debtor in Possession*

## EXHIBIT B-1

**MASTER BALLOT FOR ACCEPTING OR REJECTING
THE PREPACKED PLAN OF REORGANIZATION PROPOSED BY
DEERFIELD RETIREMENT COMMUNITY, INC.**

# EXHIBIT B-2

**BENEFICAL HOLDER BALLOT FOR ACCEPTING OR REJECTING
THE PREPACKED PLAN OF REORGANIZATION PROPOSED BY
DEERFIELD RETIREMENT COMMUNITY, INC.**

**EXHIBIT B-3**

**CLASS 2 BALLOT FOR ACCEPTING OR REJECTING
THE PREPACKED PLAN OF REORGANIZATION PROPOSED BY
DEERFIELD RETIREMENT COMMUNITY, INC.**

## EXHIBIT B-4

### CLASS 5 BALLOT FOR ACCEPTING OR REJECTING
### THE PREPACKED PLAN OF REORGANIZATION PROPOSED BY
### DEERFIELD RETIREMENT COMMUNITY, INC.

# EXHIBIT C

# VOTING REPORT

**EXHIBIT D**

**CORRECTED DISCLOSURE STATEMENT AND PLAN PAGES**